## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                           Cr. No. 10-3348 MV

DAVID RIVERA,

      Defendant.

### MEMORANDUM OPINION AND ORDER

Defendant first appeared for sentencing on May 15, 2012.   Because of concerns about the forfeiture provisions contained in Defendant's plea agreement ("Plea Agreement"), executed on August 12, 2011, the Court continued the sentencing hearing.   Thereafter, in accordance with the Court's request, the parties submitted memoranda of law on the issue of forfeiture.   On September 6, 2012, Defendant again appeared for sentencing.   At the hearing, the Court stated on the record that it remained concerned about the forfeiture provisions contained in the Plea Agreement, and for that reason, would not accept the Plea Agreement.   This Memorandum Opinion and Order sets forth in detail the Court's concerns.

### BACKGROUND

Defendant, who is 40 years old, was born in Chihuahua, Mexico.   His father died when he was 12 years old.   He moved to the United States when he was 15 years old.   He graduated from high school in Texas in 1998.   At 19 years old, he moved to Santa Fe, New Mexico, where he has lived ever since.   He became a naturalized citizen in 1998.   For several years, Defendant worked in various kitchen staff positions, earning pay ranging from $7 per hour to $10.50 per hour.   In

2007, he attended a two-day training course to obtain a car dealership license.   Since then, Defendant has owned David's Auto Mart, a used car lot with two locations in Santa Fe. Defendant sells approximately 20 cars each month, for an average of $4,000 to $12,000, and buys approximately 12 cars each week at car auctions, totaling 20 to 24 cars each month.   His customers pay cash for the cars.   Defendant provides in-house financing at 0% interest, requiring 1/3 down and monthly payments.   If the customer fails to make the payments, Defendant repossesses the car.   Defendant reports all of the income from his business on his tax returns. Defendant has been working to become more educated so that he can learn the "right way" to have a successful business.

From February 2, 2009 through June 29, 2010, Defendant "structured transactions" totaling $1,149,290, by making cash deposits of less than $10,000 each into six accounts at three banks.   Defendant reported to Probation that all of the deposits at issue were proceeds from his business.   There is no evidence that Defendant benefitted from his offense conduct, or that he was attempting to evade paying taxes, launder money, or in any other way facilitate illegal activity by structuring his transactions.   Rather, Defendant admitted that he had heard that if you make cash deposits over $10,000, the State will be notified.   Defendant advised that this worried him because he did not know what would happen.   For this reason, he had been making deposits less than $10,000 "for a long time."   Defendant confirmed that he made multiple deposits on the same day because he did not want to deposit more than $10,000 cash at one time.

As a result of this conduct, Defendant was charged in an Indictment with 11 counts of "Structuring Transactions to Evade Reporting Requirement," in violation of 31 U.S.C. § 5324(a)(1) & (d)(1).   Doc. 1.   The Indictment also contains a "Forfeiture Allegation."   The Forfeiture Allegation provides that, upon conviction of one or more of the offenses alleged in

Counts 1 through 11 of the Indictment, Defendant shall forfeit to the United States pursuant to 31 U.S.C. § 5317(c)(1) or 21 U.S.C. § 853 any property, real or personal, involved in the offense and any property traceable thereto, including but not limited to: (1) the sum of "at least $1,920,440 United States currency, representing the amount of money derived from or involved in the offenses;" (2) funds totaling $520,171.62 seized from certain of Defendant's bank accounts; and (3) substitute assets, which includes "any other property of the defendant up to the value of the forfeitable property described above," in the event that any of the forfeitable property cannot be located, has been sold, has been placed beyond the Court's jurisdiction, has diminished in value, or has been commingled with other property that cannot be divided.   *Id.* at 6-7.

Defendant pled guilty to Counts 1 to 10 of the Indictment.   *See* Doc. 23.   The Plea Agreement provides that the government will move to dismiss Count 11 of the Indictment following sentencing.   *Id.* ¶ 19(a).   In paragraph 14 of the Plea Agreement, Defendant agreed to forfeit the funds listed in item (2) above, namely funds totaling $520,172 from certain of his bank accounts, in addition to 10 vehicles.   *Id.* ¶ 14.

Pursuant to Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure, the Court entered a Consent Preliminary Order of Forfeiture on October 14, 2011 ("Preliminary Order").   Doc. 24. In the Preliminary Order, the Court notes that pursuant to his Plea Agreement, Defendant agreed to forfeit the funds totaling $520,171.62 seized from his bank accounts, and defines these funds as the "Subject Property".   The Court then orders that the Subject Property is hereby forfeited to the United States.   The Preliminary Order notes that the Court retains jurisdiction to enforce and amend as necessary.   The Order does not mention the vehicles that Defendant agreed in the Plea Agreement to forfeit.   The Preliminary Order does not become final as to Defendant until he is sentenced.   *See* Fed. R. Crim. P. 32.2(b)(4).

3

Defendant appeared before the Court for sentencing on May 15, 2012.   At the hearing, the Court expressed concern about whether the government had met its burden of establishing that the funds and vehicles that Defendant agreed in the Plea Agreement to forfeit were properly subject to criminal forfeiture.   For this reason, the Court continued the sentencing, and ordered the parties "to file memoranda of law . . . addressing the issue of whether, for purposes of the Court's forfeiture determination, the requisite nexus exists between the property that Defendant agreed in the Plea Agreement to forfeit (namely, $520,171.62 and ten vehicles) and the structuring offenses to which Defendant pled guilty."   Doc. 35.

In accordance with the Court's order, on June 1, 2012, the government filed its Memorandum of Law Regarding Property Nexus.   Doc. 36.   In essence, the government's brief appears to concede that there is a nexus only between funds totaling $168,780 and Counts 1 to 10, the offenses of conviction, and that this is the amount properly subject to criminal forfeiture.   Also on June 1, 2012, Defendant filed his Memorandum of Law on Behalf of David Rivera Pursuant to Order.   Doc. 37.   In his brief, Defendant clearly states that he does "not advocate for rejection of the plea agreement" or "seek to abrogate it."   *Id.* at 28.   Nonetheless, Defendant argues at length as to the unconstitutionality of forfeiture in this case, and appears to be asking the Court, albeit obliquely, for some form of relief from the forfeiture provisions to which he agreed in the Plea Agreement.

After the parties' briefs were filed, the Court held a hearing on September 6, 2012.   After hearing argument from the parties on the forfeiture issue, the Court advised that it would not accept the Plea Agreement or sentence Defendant in accordance therewith.   The Court further advised that a written opinion explaining its decision would follow.

4

**DISCUSSION**

I.    Legal Standard

31 U.S.C. Section 5317(c)(1), the applicable criminal forfeiture statute, provides in

relevant part:

> The court in imposing sentence for any violation of section . . . 5324 of this title . . .
> shall order the defendant to forfeit all property, real or personal, involved in the
> offense and any property traceable thereto. . . . Forfeitures under this paragraph
> shall be governed by the procedures established in [21 U.S.C. Section 853].

31 U.S.C. § 5317(c)(1).    Forfeiture is an element of the sentence imposed following conviction.

*United States v. Bader*, 678 F.3d 858, 893 (10th Cir.), *cert. denied*, __ S. Ct. __, 2012 WL 3113292

(Oct. 1, 2012).   The government's burden is to establish the nexus between the property and the

offense by a preponderance of the evidence.   *Id.* (citing Stefan D. Casella, *Asset Forfeiture Law in*

*the United States* § 15-3(d), at 480 (2007)).   The required nexus must be between "the property

forfeited and *an offense of conviction* that authorizes forfeiture."   *Bader*, 678 F.3d at 894

(emphasis in original); *see also United States v. Bornfield*, 145 F.3d 1123, 1137-38   (10th Cir.

1998) (dismissing the government's suggestion that both bank accounts at issue were tied to the

structuring count because if that were true, "the government would have no basis for forfeiture of

either account as [defendant] was not convicted of the structuring charge"), *cert. denied*, 528 U.S.

1139 (2000); *United States v. Capoccia*, 503 F.3d 103, 116 (2d Cir. 2007) ("The violation on

which the forfeiture is based must be the specific violations of which Capoccia was convicted.");

*United States v. Hasson*, 333 F.3d 1264, 1279 n.19 (11th Cir. 2003) ("We do not mean to imply

that a court could impose a forfeiture order based on a money laundering offense with which the

defendant was not charged or for which he was acquitted."), *cert. denied*, 541 U.S. 1056 (2004).

Accordingly, the government's burden is to establish a nexus between the forfeited

property and the specific offense to which the defendant either pled guilty or was found guilty at

trial.   The only exception to this rule appears to be where uncharged or acquitted conduct "is part

of the same scheme or enterprise as convicted conduct."   *Capoccia*, 503 F.3d at 118.

Specifically, "[w]here the conviction itself is for executing a scheme, engaging in a conspiracy, or

conducting a racketeering enterprise, the government need only establish that the forfeited assets

have the requisite nexus to that scheme, conspiracy, or enterprise."   *Id.*

     "Criminal forfeiture is not a matter within the district court's discretion."   *United States v.

McGinty*, 610 F.3d 1242 (10th Cir. 2010).   Instead, "the plain language of [31 U.S.C. Section

5317(c)(1)] indicates the mandatory nature and scope of criminal forfeiture."   *Id; see also United

States v. Monsanto*, 491 U.S. 600, 607 (1989) ("Congress could not have chosen stronger words to

express its intent that forfeiture be mandatory in cases where the statute applied, or broader words

to define the scope of what was to be forfeited.").   Nonetheless, in *United States v. Bajakajian*,

524 U.S. 321 (1998), the Supreme Court made clear that this "broad forfeiture provision is limited

by the Excessive Fines Clause of the Eighth Amendment."   *United States v. Castello*, 611 F.3d

116, 120 (2d Cir. 2010) (citing *Bajakajian*, 524 U.S. at 327-28), *cert. denied*, 131 S. Ct. 1533

(2011).   The defendant has the burden of showing the unconstitutionality of the forfeiture.   *Id.*

     "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the

principle of proportionality:   The amount of the forfeiture must bear some relationship to the

gravity of the offense that it is designed to punish."   *Bajakajian*, 524 U.S. at 334.   The rule is that

"a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the

gravity of a defendant's offense."   *Castello*, 611 F.3d at 120.

     Accordingly, Section 5317(c)(1)(A) must be read in conjunction with *Bajakajian*:   "the

proper amount of forfeiture following a [Section 5324] conviction is the total forfeitable amount

required by the statute, discounted by whatever amount is necessary to render the total amount not

'grossly disproportional' to the offense of conviction."   *Id.*   Four factors, distilled from

*Bajakajian*, guide the Court's analysis:

> (1) the essence of the crime of the defendant and its relation to other criminal activity; (2) whether the defendant fit[s] into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct.

*Id.*   (citation omitted).   In *Bajakajian*, customs inspectors, using dogs trained to smell currency,

stopped Bajakajian as he awaited a plane to Italy and advised him that under federal law anyone

transporting more than $10,000 in currency outside the United States must file a report with the

federal government.   *Bajakajian*, 524 U.S. at 324.   Bajakajian claimed that he had only $8,000

and his wife $7,000; but their bags contained over $350,000 in cash.   Bajakajian was convicted of

willfully failing to report, in violation of 31 U.S.C. Sections 5316, 5322(a).   Acting pursuant to a

forfeiture statute nearly identical to Section 5317(c)(1)(A), the district court determined that

forfeiture of the whole $350,000, as mandated by statute, would be "grossly disproportionate to the

offense in question," and accordingly, limited the forfeiture to $15,000.   *Id.* at 326.

The Supreme Court affirmed, and its analysis tracked the four factors listed above.   First,

"the essence of [the defendant's] crime" was a reporting violation wholly "unrelated to any other

illegal activities.   The money was the proceeds of legal activity and was to be used to repay a

lawful debt."   *Id.* at 337-38.   Second, the defendant "d[id] not fit into the class of persons for

whom the statute was principally designed:   He [wa]s not a money launderer, a drug trafficker, or

a tax evader."   *Id.* at 338.   Third, "under the Sentencing Guidelines, the maximum sentence that

that could have been imposed . . . was six months, while the maximum fine was $5,000.   Such

penalties confirm a minimal level of culpability."   *Id.* at 339.   Fourth, "[t]he harm that [the

defendant] caused was also minimal. Failure to report his currency affected only one party, the

Government, and in a relatively minor way. There was no fraud on the United States, and [the

defendant] caused no loss to the public fisc." *Id.* For these reasons, the Court held that forfeiture

of the entire amount of the unreported funds, as authorized by statute, would be grossly

disproportional to the gravity of Bajakajian's offense. *Id.*

II.    The Instant Case

    A.    The Total Forfeitable Amount Required by Statute

Defendant's conviction under Counts 1 through 10 of the Indictment is not for a scheme,

conspiracy or enterprise. Rather, Section 5324 prohibits individual instances of structuring

transactions to evade a financial institution's reporting requirements. 31 U.S.C. § 5324.

Accordingly, only property with a nexus to Defendant's offenses of conviction – those charged in

Counts 1 through 10 of the Indictment – is subject to criminal forfeiture. The government admits

that Defendant did not plead guilty to an offense charged as a scheme or conspiracy, and thus that

criminal forfeiture is limited to only that property which has a nexus to Defendant's offenses of

conviction.

In Counts 1 through 10 of the Indictment, Defendant is charged with making multiple cash

deposits on various dates into three accounts at Wells Fargo Bank, each deposit in an amount

under $10,000. The total amount of funds attributable to the structuring in these accounts is

$168,780, as follows:

- On February 6, 2009, Defendant made two cash deposits into Wells Fargo business checking account number *3301, each below $10,000, totaling $17,330.

- On May 18, 2009 to May 10, 2010, Defendant made 17 deposits into Wells Fargo business checking account number *3470, each below $10,000, totaling $141,950.

8

- On February 11, 2009 to April 29, 2010, Defendant made two deposits into Wells Fargo personal checking account number *9879, each below $10,000, totaling $9,500.

Thus, the government has established, by a preponderance of the evidence, a nexus between the sum of $168,780 and Defendant's offenses of conviction.   On the other hand, the remainder of the $520,171.62 seized by the government, and agreed by Defendant in the plea agreement to be forfeited, is attributable to the structuring of deposits charged in Count 11 of the Indictment.   Defendant did not plead guilty to Count 11, and the government has agreed to dismiss that count after sentencing.   Accordingly, there is no nexus between the sum of $351,391.62 and Defendant's offenses of conviction.   Criminal forfeiture thus is properly limited by statute to $168,780.[1]   Nonetheless, the government remains free to seek – and has indicated that it fully intends to seek – forfeiture of the remaining portion of the $520,171.62 seized (which would be $351,391.62) in a civil forfeiture proceeding.   *See* 31 U.S.C. § 5317(c)(2).

B.     The Constitutionality of Forfeiture

In his brief, Defendant raises the spectre of the unconstitutionality of forfeiture in this case. Defendant does not, however, directly argue that the sum of $168,780 tied to his offenses of conviction, or even the full forfeiture amount of $520,171.62 to which the parties agreed, would be grossly disproportional to his offenses of conviction in violation of the Eighth Amendment. Indeed, Defendant is foreclosed from making such arguments, as he expressly waived his right to do so in the Plea Agreement.   Specifically, Defendant "agree[d] to waive any claim or defense

---

[1] The Plea Agreement also provides for the forfeiture of 10 vehicles.   In its brief, the government states that Defendant's agreement to forfeit the vehicles was effectuated in a civil settlement agreement filed in September 2011.   *See* 11CV434, Doc. 10.   A final order of forfeiture has been entered, and the vehicles have been sold for $31,050.   *See* 11CV434, Doc. 11.   Accordingly, the government is no longer seeking criminal forfeiture of the vehicles.

under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of said property."   Doc. 23 ¶ 17.   Defendant asserts that he gave up his challenges to the seized money in return for the government's agreement to an offense level calculation that would result in a sentence of probation.   Doc. 37 at 26.

As Defendant has not even *argued* the unconstitutionality of the forfeiture amounts at issue here, he clearly has not met his burden of *proving* the unconstitutionality of forfeiture of those amounts.   As such, the issue is not properly before the Court.   It would be impermissible for the Court to sentence Defendant in accordance with the Plea Agreement and nonetheless consider, *sua sponte*, the constitutionality of forfeiture, when the parties' bargain expressly depended on Defendant's waiver of his rights to pursue this very issue, and when it is Defendant's burden to prove that forfeiture is unconstitutionally excessive.

Based on its own analysis, however, the Court is confident that, had Defendant not bargained away his right to address the constitutionality of the amounts sought to be forfeited by the government, he would have been able to meet his burden of establishing that forfeiture of the total amount seized from his bank accounts ($520,171.62) and, indeed, even the lesser amount statutorily subject to criminal forfeiture ($168,780), would be unconstitutionally excessive.   "The first *Bajakajian* factor requires consideration of the essence of the crime of the defendant and its relation to other criminal activity."   *Castello*, 611 F.3d at 121 (citation omitted).   Here, Defendant, an unsophisticated business owner with no more education than a high school degree and a two-day training course, structured cash deposits of legally-earned profits with the intent of avoiding federal reporting regulations, for the sole reason that he was afraid of the consequences of making deposits of $10,000 or more.   There is no evidence that Defendant's reporting violations

10

facilitated any other illegal activity, or that the money deposited by Defendant represented anything other than the proceeds of his used car business.

"The second *Bajakajian* factor considers whether the defendant fits into the class of persons for whom the statute was principally designed." *Id.* at 122 (citation omitted). The statute of conviction "is a reporting statute intended to facilitate the government's efforts to uncover and prosecute crime and fraud." *Id.* As such, "[t]he overall goal of the statute was to interdict the laundering of illegally obtained and untaxed monies in legitimate financial institutions." *Id.* Here, the evidence shows only Defendant's lack of sophistication and fear of rules that he did not fully comprehend. There is no evidence that Defendant was a money launderer, drug trafficker or tax evader, or that his reporting violations in any way facilitated such offenses.

The third *Bajakajian* factor considers "the maximum sentence and fine that could have been imposed." *Id.* at 123 (citation omitted). Under the Sentencing Guidelines, the maximum sentence that could be imposed on Defendant is 24 months, while the maximum fine is $40,000. These penalties are higher than those at issue in *Bajakajian* (a maximum sentence of six months and a maximum fine of $5,000), and thus it is unclear whether the penalties here confirm, as they did in *Bajakajian*, "a minimal level of culpability." Bajakajian, 524 U.S. at 339.

The fourth *Bajakajian* factor "invites an analysis of the nature of the harm caused by [Defendant's] conduct." *Castello*, 611 F.3d at 123 (citation omitted). Here, there is no evidence that Defendant's conduct caused more than minimal harm. Indeed, just as in *Bajakajian*, Defendant's failure to report "affected only one party, the Government, and in a relatively minor way. There was no fraud on the United States, and [Defendant] caused no loss to the public fisc." *Bajakajian*, 524 U.S. at 339. Had Defendant's crime gone undetected, the government would

11

have been deprived only of the information that Defendant was depositing sums totaling $10,000 or more at one time.   *See id*.

Accordingly, all of the factors, save the third factor, weigh against forfeiture of the statutorily required amount ($168,780), and even more strongly against forfeiture of the total amount to which the parties have stipulated ($520,171.62).   Under these circumstances, the Court is not comfortable sentencing Defendant with the current Plea Agreement in place.   Doing so would require the Court to either impose a sentence that violates the Constitution, or disregard wholly the very stipulations upon which the Plea Agreement is premised and Defendant's burden of proof.   The Court is unwilling to take either approach, as both strain the bounds of conscionability.

## **CONCLUSION**

For the reasons set forth herein, the Court rejects the Plea Agreement [Doc. 23], and declines to sentence Defendant in accordance therewith.


DATED this 11th day of October, 2012.



_____
MARTHA VÁZQUEZ
United States District Judge